# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia ex rel. J.E.H.G.,**
**Petitioner**

**Vs.)  No. 16-0931**

**Honorable Tod Kaufman, Judge of the**
**Circuit Court of Kanawha County;**
**West Virginia Department of Health**
**and Human Resources; T.H.; and**
**unknown father,**
**Respondents**

**FILED**

**February 8, 2017**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner J.E.H.G.,[1] an infant child, by his guardian ad litem, Jennifer N. Taylor, petitions this Court to invoke its original jurisdiction in prohibition in this child abuse and neglect civil proceeding. Petitioner seeks a writ of prohibition to prevent Respondent herein, the Honorable Tod Kaufman, Judge of the Circuit Court of Kanawha County, from enforcing the September 26, 2016, order which granted Respondent Mother, T.H., a six-month post-adjudicatory improvement period. Respondent Mother, by her attorney, Rebecca Stollar Johnson, and the Department of Health and Human Resources ("DHHR"), by its attorney, Michael Jackson, Assistant Attorney General, have filed responses opposing the issuance of the requested writ. At oral argument in this matter, however, counsel for DHHR stated that it is no longer recommending that J.E.H.G. be reunited with Respondent Mother. Respondent Judge filed a summary response.

Upon our review of the parties' arguments, the appendix record, and the pertinent authorities, we conclude the circuit court erred as a matter of law when it failed to follow West Virginia Code § 49-4-610(2)(B) (2015) and failed to consider the best interests of J.E.H.G. We therefore grant the requested writ of prohibition and remand this matter to the circuit court with directions to:  (1) enter an order terminating the improvement period, and (2) schedule the matter for a dispositional hearing. Because this case presents no new or significant issues of law, we find this matter to be proper for disposition in a memorandum decision in accordance with Rule 21 of the West Virginia Rules of Appellate Procedure.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

Respondent Mother has had her parental rights to ten of her children terminated (or she relinquished those rights) in prior abuse and neglect proceedings. Respondent Mother has had multiple children, with multiple fathers; many of these children had unknown fathers. The prior abuse and neglect proceedings involved Respondent Mother's substance abuse, abusive relationships, and her inability to cope with the normal demands of parenting. Respondent Mother has a long history of severe mental health and substance abuse problems.

Respondent Mother gave birth to J.E.H.G. in March of 2016. Within days, the DHHR filed an emergency abuse and neglect petition against Respondent Mother and removed the infant from her custody considering the prior terminations and because of evidence that she used illegal drugs (methamphetamines) during her pregnancy. Respondent Mother waived her right to a preliminary hearing. She has had continuing supervised visitation with the child.

The guardian ad litem appointed for J.E.H.G. was also the guardian ad litem for the last two children (A.B. and N.B.) removed from Respondent Mother's care; she relinquished her rights to A.B. and N.B. in light of imminent termination.[2]

The circuit court held an adjudicatory hearing and Respondent Mother voluntarily stipulated to the allegations in the petition. The circuit court accepted her stipulation.[3] The circuit court entered an adjudicatory order on May 31, 2016, finding clear and convincing evidence that J.E.H.G. was abused and neglected as defined in West Virginia Code § 49-1-201 (2015).

Respondent Mother filed a written motion for a post-adjudicatory improvement period in July of 2016, citing her compliance with services, visitation and negative drug screens. The DHHR did not oppose an improvement period; the guardian ad litem objected to the

---

[2]Although not in the record in this case, the guardian ad litem reports that Respondent Mother periodically abandoned A.B. and N.B. (either at hospitals or on the steps of the DHHR), but then "tried her hand at parenting" through services provided by the DHHR. The guardian ad litem states that when the circuit court granted Respondent Mother unsupervised visits with A.B. and N.B., the visits went well until the night Respondent Mother placed the children (ages two and four years) on the steps of her porch, at night, with all of their belongings in a grocery bag; she allegedly called Child Protective Services to come get the children and stated she was going to commit suicide. The guardian ad litem asserts that A.B. and N.B. suffered devastating psychological damage as a result of Respondent Mother abandoning them.

[3]The appendix record before this Court is remarkably thin; there is no sworn testimony at any hearing. Following Respondent Mother's stipulation, the circuit court spent the majority of the time at the brief adjudicatory hearing focusing on obtaining a DNA sample from the purported father who happened to be in the courthouse that day on a criminal matter; he turned out to not be the child's father. Because the DHHR did not object to the improvement period, it did not submit evidence at the adjudicatory hearing on the issue of whether Respondent Mother was likely to fully participate in the improvement period and correct her past patterns of abuse and neglect. Similarly, Respondent Mother did not put forth evidence on that issue even though she had the burden of doing so. *See* W.Va. Code § 49-4-610(2)(B).

2

improvement period but stated she was agreeable to continued services and supervised visitation. Following a hearing on the matter, the circuit court granted a six-month post-adjudicatory improvement period and entered its order on September 26, 2016.[4]

On October 4, 2016, the petition for a writ of prohibition was filed with this Court and we issued a rule to show cause.[5]

In a status update filed with this Court on January 13, 2017, the DHHR reported that

> J.E.H.G. continues to reside in the same foster home where his siblings [A.B. and N.B.] were adopted. The foster home reports his placement is going well. J.E.H.G. no longer has unsupervised visits with the respondent mother. The respondent mother last had an unsupervised visit with the child in November [2016] that was ended early at her request because she reported she could not handle caring for the child and wanted someone to come get him. Although the respondent mother continues to participate in supervised visitation with J.E.H.G., because of the failed unsupervised visitation in November, the [DHHR] does not believe the respondent mother is making substantial progress in her ability to care for J.E.H.G. and is not recommending that he return to her care.

Prohibition is an appropriate remedy in cases in which the lower court has no jurisdiction over the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers. W.Va. Code § 53-1-1 (2016). Here, the circuit court has jurisdiction, so we look to the standard set out in syllabus point four of *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996):

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five

---

[4]The circuit court set forth the following terms and conditions:

1) Mother shall participate in parenting education;
2) Mother shall submit to random drug screens;
3) Mother shall participate in a psychological evaluation and follow all resulting recommendations;
4) Mother shall participate in counseling; and
5) Mother shall receive supervised visitation with her child.

As the improvement period proceeded, however, the circuit court authorized unsupervised visitation between Respondent Mother and J.E.H.G.

[5]On December 1, 2016, this Court entered an Order Granting Emergency Stay and ruled that in accordance with the visitation schedule that was in place at the time of the filing of the petition for writ of prohibition, supervised visitation would take place pending the resolution of this matter.

factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

In *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 470 S.E.2d 205 (1996), this Court granted a writ of prohibition in a child abuse and neglect proceeding and recognized that "'[o]ur modern practice is to allow the use of prohibition, based on the particular facts of the case, where a remedy by appeal is unavailable or inadequate, or where irremediable prejudice may result from lack of an adequate interlocutory review.'" *Id*. at 257, 470 S.E.2d at 211 (quoting *McFoy v. Amerigas, Inc.,* 170 W.Va. 526, 532, 295 S.E.2d 16, 22 (1982)).

Petitioner seeks a writ to prohibit the circuit court from enforcing its order granting an improvement period to Respondent Mother

> who had a 20-year history of abuse and neglect proceedings that resulted in ten (10) prior terminations or relinquishments in light of termination; where the Respondent Mother continued a constant pattern of drug abuse, abusive relationships and failure to treat her mental illness; and where there was no evidence that the Respondent Mother had substantially improved the conditions that led to the filing of any the petitions.

The crux of Petitioner's argument is that the circuit court's ruling is clearly erroneous as a matter of law and a writ of prohibition is appropriate in order to protect the best interests of J.E.H.G. We find these arguments to be compelling and grant the writ.

Pursuant to West Virginia Code § 49-4-610(2),

> [a]fter finding that a child is an abused or neglected child pursuant to section six hundred one of this article, a court may grant a respondent a [ ] [post-adjudicatory] improvement period of a period not to exceed six months when: . . .

> (B) The respondent [parent] demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period.

This Court previously has recognized that

[t]he goal [of an improvement period] should be the development of a program designed to assist the parent(s) in dealing with any problems which interfere with his ability to be an effective parent and to foster an improved relationship between parent and child with an eventual restoration of full parental rights a hoped-for result. The improvement period and family case plans must establish specific measures for the achievement of these goals, as an improvement period must be more than a mere passage of time. It is a period in which the [DHHR] and the court should attempt to facilitate the parent's success, but wherein the parent must understand that he bears a responsibility to demonstrate sufficient progress and improvement to justify return to him of the child.

*In re Carlita B.*, 185 W.Va. 613, 624-25, 408 S.E.2d 365, 377 (1991).

In response to the petition, Respondents argue generally that the circuit court was acting within its discretion to grant Respondent Mother a post-adjudicatory improvement period. This Court disagrees with Respondents' characterization of this case as one which simply involves "judicial discretion." We find the circuit court erred as a matter of law when it failed to follow the statutory mandates for granting a parent an improvement period when it issued its order without requiring Respondent Mother to go on the record and meet her threshold burden; the standard for granting an improvement period requires that Respondent Mother demonstrate, by clear and convincing evidence, that she will comply with its terms. *See* W.Va. Code § 49-4-610(2)(B). As this Court has held, fulfillment of some of an improvement period's terms without actual improvement of the conditions that led to the filing of the abuse and neglect petition simply is not enough; rather, the parent *must* actively remedy the conditions of abuse and neglect to demonstrate such improvement. *See Carlita B.*, 185 W.Va. at 626, 408 S.E.2d at 378. Because the lower court violated this clear statutory mandate, and irremediable prejudice may result from the delays inherent in waiting until the conclusion of the improvement period and for the matter to be set for disposition, we find that prohibition is an appropriate remedy in this case.

Respondent Mother has gone through several rounds of DHHR services over the years – a period spanning two decades – and still demonstrates her propensity to return to the conditions that led to the abuse and neglect findings in the previous cases. As we have long held, "when a parent cannot demonstrate that he/she will be able to correct the conditions of abuse and/or neglect with which he/she has been charged, an improvement period need not be awarded before the circuit court may terminate the offending parent's parental rights." *In re Emily*, 208 W.Va. 325, 336, 540 S.E.2d 542, 553 (2000). Moreover, "[c]ases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the child(ren)." Syl. Pt. 7, *In Matter of Brian D.,* 194 W.Va. 623, 461 S.E.2d 129 (1995). This is so because the overarching goal in abuse and neglect proceedings is to protect the subject children. "Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. pt. 3, *In re Katie S.,* 198 W.Va. 79, 479 S.E.2d 589 (1996); Syl. Pt. 8, in part, *In re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973) ("Once a court exercising proper jurisdiction has made a determination upon sufficient proof that a child has been neglected and his natural parents were so derelict in their duties as to be unfit, the welfare of the infant is the polar star by which the discretion of the court is to be guided in making its award of legal custody.").

Given Respondent Mother's extensive history with the DHHR, and her drug use while pregnant with J.E.H.G., it is readily apparent that an improvement period likely would only prolong the inevitable – the eventual removal of J.E.H.G. from the home – and further delay in his permanency. *See* W.Va. R. P. Child Abuse & Neglect Proceedings 43 (addressing expedient resolution of abuse and neglect proceedings). We commend the guardian ad litem's efforts to protect this child and petition this Court for extraordinary relief considering the egregious facts of this case.

Accordingly, we find the circuit court committed clear legal error in granting Respondent Mother a post-adjudicatory improvement period as she failed to put forth evidence to show she is able to correct the conditions of abuse and/or neglect. Moreover, we find the circuit court failed to adequately consider J.E.H.G.'s best interests when deciding to grant Respondent Mother a post-adjudicatory improvement period.

> As we said in *In re Carlita B.,* 185 W.Va. 613, 623, 408 S.E.2d 365, 375 (1991), the early, most formative years of a child's life are crucial to his or her development. There would be no adequate remedy at law for these children were they permitted to continue in this abyss of uncertainty. We have repeatedly emphasized that children have a right to resolution of their life situations, to a basic level of nurturance, protection, and security, and to a permanent placement.

*State ex rel. Amy M.,* 196 W.Va. at 257-58, 470 S.E.2d at 211-12.

For ten months now, J.E.H.G.'s future has remained uncertain. To require him to wait while Respondent Mother attempts to develop parenting skills that, for nearly two decades were almost wholly absent, is certainly not in J.E.H.G.'s best interests. *See* Syl. Pt. 1, in part, *Carlita B.,* 185 W.Va. 613, 408 S.E.2d 365 ("Child abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security."). This is especially so when the likelihood appears slim to none that Respondent Mother would ultimately be successful in meeting this extreme challenge. *See* Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980) ("[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements.").

For the reasons set forth above, this Court finds that the Circuit Court of Kanawha County erred as a matter of law when it failed to follow West Virginia Code § 49-4-610(2)(B) and failed to consider the best interests of J.E.H.G. by granting a post-adjudicatory improvement period to Respondent Mother. Because the best interests of J.E.H.G., a child of extremely tender age, do not support a further delay in his reaching permanency, we grant the requested writ of prohibition. Additionally, because the denial of an improvement period forecloses the possibility of reunification between J.E.H.G. and Respondent Mother, we remand this case with instructions to schedule this matter for a dispositional hearing.

6

On remand, the circuit court should be aware that the guardian ad litem reported to this Court that Respondent Mother has made threats to harm or kill herself and/or the child should her parental rights be terminated in this proceeding. The DHHR is hereby directed to investigate this serious allegation without delay and file a report to the circuit court.

The Clerk of this Court is hereby directed to issue the mandate forthwith.

Writ granted.


**ISSUED:** February 8, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

7